UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

 Plaintiff,

v.   Case No.: 23-cv-1555

JAMES T. ABBOTT,

 Defendant.

**DEFENDANT'S COMBINED REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION …………………………………………………………………..1

ARGUMENT …………………………………………………………………..2

    I.      Mr. Abbott's Late Filing of his Combined Financial Disclosure
           Report was not Willful …………………………………………………..2

    II.     Should the Court Find Willfulness, Only a *De Minimis* Penalty
           Would be Appropriate ……………………………………………………3

         a.   Plaintiff Continues to Base its Request for a Penalty of $40,000
             on an Inapplicable Legal Framework………………………………3

         b.   Mr. Abbott's Late Filing of his Report was not Flagrant
             or Ongoing ……………………………………………….……..4

         c.   Mr. Abbott has a Long History of Compliance with the EIGA……4

         d.   There is no Evidence that Mr. Abbott was Motivated by a Desire
             to Avoid Reporting Financial Transactions ……………………….6

         e.   Mr. Abbott's Modest Resources Warrant a *De Minimis* Civil
             Penalty……………………………………………………………….6

         f.   Plaintiff's Unfounded Attacks on Mr. Abbott's Integrity
             Do Not Support the Substantial Penalty that Plaintiff Seeks……..7

CONCLUSION ………………………………………………………………….10

## TABLE OF AUTHORITIES

**Cases**                                                                       Page(s)

*Securities and Exchange Commission v. Milan Group*,
   124 F. Supp. 3d 21 (D.D.C. 2015) ……………………………………………….3, 4

*United States v. Chaney*, No. 04-2219 (ESH), 2005
   U.S. Dist. LEXIS 61035 (D.D.C. 2005)…………………………………………….3, 4

*United States v. Gant*, 268 F. Supp. 2d 29 (D.D.C. 2003) …………………………..2, 3, 4

\**United States v. Lairy*, No. 19-2488 (RC),
   2020 U.S. Dist. LEXIS 126199 (D.D.C. 2020) ………………………………….3, 4, 6

*United States v. Manigault Newman*, 594 F. Supp. 3d 1 (D.D.C. 2022) …………..2, 3, 4, 6, 7

\* *United States v. Neelon,*  No. 23-03-03177 (ACR),
   2024 U.S. Dist. LEXIS 86375 (D.D.C. 2024) ……………………………………….3, 4, 7

*United States v. Tarver*, 642 F. Supp. 1109 (D. Wyo. 1986) …………………………3

**Rules**

Federal Rules of Civil Procedure, Rule 55(a)………………………………….…..5

Federal Rules of Civil Procedure, Rule 55(b)(2) …………………………………5

\* Authorities upon which Defendant chiefly relies are marked by asterisks.

**INTRODUCTION**

James T. Abbott's untimeliness in filing his combined financial disclosure report after he left Government service, while unfortunate, was not a willful violation of the Ethics in Government Act. Although he was mindful of his obligation to file the report, a series of events beyond his control caused him to file the report approximately nine months after his deadline of August 2022. There is no allegation or evidence that Mr. Abbott was attempting to conceal complex or suspect investment transactions, or that he ever engaged in such transactions during his 30-plus years of filing financial disclosure reports. Nor is there any allegation or evidence that he ever engaged in any activity that conflicted with, or created the appearance of, a conflict with his duties either at the Federal Labor Relations Authority or at any other Federal agency at which he was employed.

If, however, this Court finds that this single anomaly in Mr. Abbott's long and consistent history of compliance with EIGA's filing requirements, occurring during an unusually stressful time in his life, was a willful violation, it should impose but a *de minimis* penalty. As set out in Mr. Abbott's cross motion for summary judgment, in addition to his lengthy and consistent record of compliance with the EIGA reporting requirements, mitigating factors include the simple and straight-forward nature of his filings, including his combined financial disclosure report, and the financial hardship that would result if Mr. Abbott is ordered to pay a civil penalty of $40,000 or more.

Perhaps recognizing that these mitigating factors warrant a low civil penalty, Plaintiff now attempts to attack Mr. Abbott's character, going so far as accusing him of perjury. Further, Plaintiff accuses Mr. Abbott of "needlessly expend[ing] government resources by demanding unproductive mediation" after finding fault with him for not responding to Plaintiff's purported

earlier overtures towards a settlement. Plaintiff's unfounded accusations that Mr. Abbott is a perjurer and waster of government resources should not detract from the fact that the stiff civil penalty that Plaintiff asks the Court to impose is disproportionate to Mr. Abbott's late filing of his post-employment financial disclosure report.

**ARGUMENT**

I. Mr. Abbott's Late Filing of his Combined Financial Disclosure Report was Not Willful.

Without reiterating his arguments in his Memorandum in Support of Cross Motion for Summary Judgment, ECF Document 25, pp. 8-9. Mr. Abbott submits that he filed his combined financial disclosure report on May 31, 2023, ten days before he learned, on June 9, 2023, that Plaintiff had filed suit. Declaration of James T. Abbott, dated October 25, 2024, ECF Document 23, Att. 3, p. 8. He explained that immediately prior to May 31, 2023, he was the victim of an assault and battery that resulted in significant physical injury in trauma, which prevented him from filing the report sooner in response to Plaintiff's May 12, 2023 letter notifying him that suit would be filed on or about May 30, 2023, if Mr. Abbott did not respond. Also, as Mr. Abbott explained in his Declaration, following the assault and battery, circumstances arose that caused Mr. Abbott, out of concern for his safety, to temporarily leave his home. ECF Document 23, Att. 3, p. 8. In an effort to avoid litigation, Mr. Abbott filed his report as soon thereafter as he could.

This distinguishes Mr. Abbott's situation from that of the defendant in *United States v. Manigault Newman*, 594 F. Supp. 3d 1 (D.D.C. 2022) who waited two and half months after she was sued before filing her financial disclosure report with no apparent excuse for that delay. Also distinguishable is *United States v. Gant*, 268 F. Supp. 2d 29 (D.D.C. 2003), where the defendant, unlike Mr. Abbott, never filed his termination report, even after suit was filed against him. This Court has held that an individual who files his EIGA report when threatened with legal action, as

2

was the case here, has not engaged in an ongoing violation. *United States v. Chaney*, No. 04-2219 (ESH), 2005 U.S. Dist. LEXIS 61035, at *6 (D.D.C. 2005) (distinguishing *United States v. Tarver*, 642 F. Supp. 1109 (D. Wyo. 1986), where the defendant "complied when threatened with legal action, so his violation was not ongoing as is the case here.") Notably, this is the first case, of which we are aware, in which the U.S. Attorney's Office is seeking to impose a penalty against a former Federal employee who did not wait until he was notified that a lawsuit had been filed against him before filing his termination report.

II. Should the Court Find Willfulness, Only a *De Minimis* Penalty Would be Appropriate.

a. **Plaintiff Continues to Base its Request for a Penalty of $40,000 on an Inapplicable Legal Framework.**

Rather than applying the standards that this Court has applied to other EIGA civil penalty cases, Plaintiff continues to insist on applying the standards set out in *Securities and Exchange Commission v. Milan Group*, 124 F. Supp. 3d 21, 25 (D.D.C. 2015), which apply specifically to cases of securities fraud. ECF Document 28, pp. 7-8. There is no allegation or evidence that Mr. Abbott engaged in fraud. *Milan Group* sets out factors for assessing penalties of up to $150,000 per violation that include the degree of scienter when committing fraud and "whether the conduct created substantial losses to other persons." These factors are not relevant to a former Federal employee's late filing of a financial disclosure report. Instead, when tailoring EIGA civil penalties, this Court has considered: (1) whether the violation was flagrant and ongoing[1]; (2) the filer's prior history of compliance with EIGA[2]; (3) whether the filer was motivated by a

---

[1] *United States v. Lairy*, Case No. 19-2488 (RC), 2020 U.S. Dist. LEXIS 126199, at *8; *United States v. Gant,* 268 F. Supp. 2d at 33; *United States v Chaney*, Case No. 04-2219 (ESH), 2005 U.S. LEXIS 61035, at *6 (D.D.C. 2005).

[2] *United States v. Neelon*, Case No. 23-03177 (ACR), 2024 U.S. Dist. LEXIS 86375, at *9.

3

desire to avoid reporting transactions[3]; and (4) the filer's financial resources[4]. Plaintiff's suggestion that these factors and the *Milan Group* factors applicable to securities fraud are "substantively the same" is false. ECF Document 28, p. 7.

### b. Mr. Abbott's Late Filing of his Report was not Flagrant or Ongoing.

As discussed above, unlike the defendants in *Gant*, *supra*, *Manigault-Newman*, *supra*, and *United States v. Neelon*, No. 23-03-03117 (ACR), 2024 U.S. Dist. LEXIS 86375 (D.D.C. 2024), Mr. Abbott attempted to eliminate the need for litigation by filing his financial disclosure statement before he knew that a lawsuit had been filed. His was not a flagrant or ongoing violation of the EIGA. An individual who files his EIGA report when threatened with legal action, as was the case here, has not engaged in an ongoing violation. *Chaney*, 2005 U.S. Dist. LEXIS 61035, at *6 (D.D.C. 2005)

### c. Mr. Abbott has a Long History of Compliance with the EIGA.

What makes Mr. Abbott's case unique among other EIGA cases is that his one-time untimely filing of a financial disclosure report followed a 30-plus-year record of consistent and compliant filings of financial disclosure reports. This record far surpasses that of the defendant in *Neelon*, who complied with her annual filing obligations from 2013 through 2020 but failed, at any time, to file her termination financial disclosure report, which had been due by September 30, 2021, two years before the United States filed suit against her. *Neelon*, 2024 U.S. Dist. LEXIS 86375 at *3, *5.

Nonetheless, Plaintiff asserts that Mr. Abbott should be ordered to pay a higher penalty

---

[3] *Lairy*, 2020 U.S. Dist. LEXIS 126199, at *9; *Neelon*, 2024 U.S. Dist. LEXIS 86375, at *9.

[4] *Lairy*, 2020 U.S. Dist. LEXIS 126199, at *9; *United States v. Manigault Newman*, 594 F. Supp. 3d 1, 8-9 (D.D.C. 2022)

4

than Ms. Neelon was ordered to pay because "the defendant, in that case did not, as here, needlessly expend government resources by demanding unproductive mediation and requiring that the United States effectively brief this matter twice – once on a motion for default judgment and again on a motion for summary judgment." ECF Document 28, p. 12. Plaintiff's assertion is concerning for several reasons.

First, it is puzzling that Plaintiff faults Mr. Abbott for requesting mediation after faulting him for not responding to its earlier offer to discuss settlement. ECF Document 28, p. 2. Nor is there any basis for accusing Mr. Abbott of "demanding unproductive mediation." As Plaintiff should know, what sometimes happens in mediation, despite the parties' best efforts, is that an impasse is reached. That Mr. Abbott chose not to accept whatever terms Plaintiff offered, and that Plaintiff chose not to accept whatever terms Mr. Abbott offered, does not mean that Mr. Abbott caused the waste of Government resources.

Nor did Mr. Abbott "require" Plaintiff to file two briefs. Instead, when one party seeks a default judgment against another party, Rule 55(a) of the Federal Rules of Civil Procedure provides for a two-step process. First, the plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend against an action." Fed. R. Civ. P. 55(a). Second, if the plaintiff's claim is not for a "sum certain," the party must apply to the court for an entry of default judgment. Fed. R. Civ. P. 55(b)(2). Here, the Clerk of the Court entered a default against Mr. Abbott on September 7, 2023. ECF Document 6. Because Plaintiff's claim was not for a sum certain, Plaintiff, on October 31, 2023, filed a motion for default and final judgment. ECF Document 7. Then, on August 29, 2024, the Court issued a Minute Order denying Plaintiff's motion finding that Mr. Abbott was "no longer essentially unresponsive" and, therefore, that a default judgment against him would not be appropriate. The

Court ordered the parties to propose next steps. In response, the parties filed a Joint Status Report setting out a proposed schedule for summary judgment motions. ECF Document 21. In other words, by faulting Mr. Abbott for its need to file two briefs, Plaintiff essentially is faulting Mr. Abbott for responding to the litigation, after faulting him for not responding to the litigation.

### d. There is no Evidence that Mr. Abbott was Motivated by a Desire to Avoid Reporting Financial Transactions.

Similar to the defendant in *United States v. Lairy*, No. 19-2488 (RC), 2020 U.S. Dist. LEXIS 126199, *9 (D.D.C. 2020), Mr. Abbott's financial disclosures "do not reflect a sophisticated financial operator with a strong motive to hide problematic transactions." Inasmuch as the transactions and lists of assets and liabilities reported in Mr. Abbott's final report were also reported in his 2021 report, his delay in filing his final report could not have been motivated by a desire to conceal any of those items. Instead, like defendant Lairy's failure to file, Mr. Abbott's delayed filing "was at least partially the result of serious personal distress." *Lairy*, 2020 U.S. Dist. LEXIS 126199, at *9-10.

### e. Mr. Abbott's Modest Resources Warrant a *De Minimis* Civil Penalty.

As explained in his Declaration, the bulk of the assets listed in Mr. Abbott's combined financial disclosure report and the previous report he filed in 2021 are in a family trust administered by his spouse and for the benefit of his spouse and their two children, but not for the benefit of Mr. Abbott. He has no access to or control over the assets in the trust. This distinguishes his situation from that of the defendant in *Manigault Newman*, who was a 1/3 beneficiary of a trust worth more than $1 million. *Manigault Newman*, 594 F. Supp. 3d at 9.[5] The few reported assets that are actually available to Mr. Abbott, himself, represent just a small

---

[5] The value of the trust was listed as between $1,000,0001 and $5,000,000 in Ms. Manigault Newman's financial disclosure statement. ECF Case 1:119-cv-01868-RJL, Document 24-3, Jones Decl., Ex. C at 16.

fraction of what is identified in the financial reports.

Nonetheless, Plaintiff assumes that Mr. Abbott's financial ability to pay a substantial fine must be greater than that of Ms. Manigault Newman because she collected her substantial Government salary for only one year, before being fired, whereas Mr. Abbott served as an FLRA Member for five years, before his statutory term expired. ECF Document 28, p. 13. However, Plaintiff cites no support for such an assumption and fails to acknowledge that salary, alone, does not determine someone's ability to pay a substantial fine. Other factors, such as, for example, Mr. Abbott's financial obligations to his children, affect that ability. This Court has never considered an employee's longevity in a high paying Government position when assessing a civil penalty. Otherwise, the defendant in *Neelon*, who held her high paying Government position for 11 years, might have been assessed a higher civil penalty than Ms. Manigault Newman. Otherwise, employees who were fired after a short tenure would face smaller fines than employees who carried out their entire terms of employment in a satisfactory manner.

   f. **Plaintiff's Unfounded Attacks on Mr. Abbott's Integrity Do Not Support the Substantial Penalty that Plaintiff Seeks.**

Apparently recognizing that under the factors this Court considers when assessing penalties for EIGA violations, only a *de minimis* penalty would be warranted, Plaintiff cites as an additional basis for a penalty of at least $40,000 Mr. Abbott's alleged attempts to mislead the Court with knowingly false statements. Specifically, Plaintiff alleges that certain conversations Mr. Abbott attests that he had with former FLRA Alternative Designated Agency Ethics Official (ADAEO) Rebecca J. Osborne and Assistant U.S. Attorney Alexander Resar had not occurred.

In her Second Declaration, Ms. Osborne attests that she did not "have any oral conversations with Mr. Abbott after his departure from the FLRA" about lack of access to his office files preventing him from filing a report he could be sure was accurate; about concerns

7

over filing his report because of the family trust administered by his spouse, who was dealing with serious medical conditions; or about his concern that even minor inconsistencies in his report could be used against him.  Second Declaration of Rebecca J. Osborne, ECF Document 28-2, ¶ ¶ 5-9.

Notably, Ms. Osborne limits her testimony to oral conversations that took place after Mr. Abbott left the FLRA on May 17, 2022.  But, this does not take into account verbal conversations that she and Mr. Abbott had over the years about his financial disclosure statements.  What Ms. Osborne fails to mention are conversations that she and Mr. Abbott had over the years, beginning in 2017, regarding his spouse's reluctance to publicize information about his parent's estate, implicating extended family members.  Supplemental Declaration of James T. Abbott, dated December 6, 2024, Attachment 1, ¶ 4. She also fails to mention conversations that she and Mr. Abbott had over the years about his spouse's medical condition resulting from a severe automobile accident.  *Id*., at ¶ 5.

Although Ms. Osborne denies that she ever discussed with Mr. Abbott the difficulty he was having with preparing his financial disclosure report without access to the files he kept in his FLRA office, Mr. Abbott clearly recalls that such a phone conversation took place. Supplemental Declaration of James T. Abbott, ¶ 5.  In an email to Mr. Abbott from October 10, 2022, Ms. Osborne indicates that such a conversation must have taken place.  In her email, she wrote:

Member Abbott –

I hope that all is well with you and your family.  I know that your transition from Government service was abrupt and hurtful and I'm sorry about that.  Unfortunately, I was not at the table when those decisions were made.  I know that you take public service seriously and ask you to please complete your annual/termination report.

Again, I hope that all is well with you and send my best to you and your family.

8

Rebecca.

Declaration of Rebecca J. Osborne, ECF Docket No. 22-3, Exhibit M.

Ms. Osborne's email indicates that she knew of the circumstances surrounding Mr. Abbott's "abrupt and hurtful" departure from the FLRA, which included his learning, on May 17, 2022, his last day as an FLRA Member, that he was locked out of his office and that his computer access had been frozen, never to be restored, thereby denying him access to the personal or professional date stored therein.   Her reference to "when those decisions were made" certainly would have included the decision to block Mr. Abbott's access to his files, containing information he needed to make sure that his combined financial disclosure report was accurate.

Although their recollections differ as to whether or not they discussed specifically Mr. Abbott's need for access to his records in order for him to complete a report that he could feel confident was completely accurate, he continues to recall that such a conversation took place. Supplemental Declaration of James T. Abbott, ¶ 6.  However, if Mr. Abbott's recollection turns out to be inaccurate, that would be a mistake, not a lie.  Any such mistake should not brand Mr. Abbott as an unethical individual who should be harshly penalized with the steep civil penalty for which the United States advocates.

Regarding his communications with AUSA Resar, Mr. Abbott testified in his original declaration as to conversations he may have had with AUSA Resar between February and May of 2023.  As he clarifies in his Supplemental Declaration, once he received notice in April 2023 that AUSA Resar was assigned to this case, he made at least two telephone calls, and left voice messages, to AUSA Resar, one preceding his assault in mid-May 2023 and one following. Supplemental Declaration of James T. Abbott, ¶ 11.

## CONCLUSION

For the foregoing reason, any civil penalty that the Court orders against Mr. Abbott should be *de minimis*.

Dated:  December 6, 2024                    Respectfully submitted,

/s/ Rosa M. Koppel
Rosa M. Koppel
D.C. Bar No. 405779
Law Offices of Larry J. Stein, LLC
P.O. Box 752
McLean, Virginia  22101-0752
Telephone: 301-542-4267
rosakoppel@ljslaw.net

**CERTIFICATE OF SERVICE**

On December 6, 2024, I caused the foregoing Defendant's Combined Reply Memorandum of Law in Support of Defendant's Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment as well as the concurrently filed declaration in support of the foregoing Memorandum to be filed electronically with the Clerk of the Court through the CM/ECF system.


/s/ Rosa M. Koppel