## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

           *Plaintiff,*

    v.

JAMES T. ABBOTT,

           *Defendant.*

Civil Action No. 23 - 1555 (LLA)

## <u>MEMORANDUM OPINION</u>

Plaintiff United States of America seeks a civil penalty of $40,000 from Defendant James T. Abbott for his failure to file financial disclosure reports required by the Ethics in Government Act ("EIGA"), 5 U.S.C. § 13101 *et seq.* The parties have filed cross-motions for summary judgment. ECF Nos. 22, 23. For the reasons that follow, the court will grant the United States' motion for summary judgment and deny Mr. Abbott's motion for summary judgment.

## I.      STATUTORY BACKGROUND

Enacted in the aftermath of Watergate, the EIGA "established financial reporting requirements for key personnel in each of the three branches of the federal government." *United States v. Rose*, 28 F.3d 181, 183 (D.C. Cir. 1994). Covered government employees must disclose financial information such as their "income, gifts received, property interests, liabilities, real estate and securities transactions, positions held, and the value of a qualified blind trust." *Lovitky v. Trump*, 949 F.3d 753, 755 (D.C. Cir. 2020); *see* 5 U.S.C. § 13104. The EIGA is designed to "increase public confidence in the federal government, demonstrate the integrity of government

officials, . . . and enhance the ability of the citizenry to judge the performance of public officials." *Lovitky*, 949 F.3d at 755 (quoting *United States v. Oakar*, 111 F.3d 146, 148 (D.C. Cir. 1997)).

As relevant here, the EIGA's financial reporting requirements apply to employees in the Executive Branch who hold a position compensated at a rate of basic pay that is "equal to or greater than 120 percent of the minimum rate of basic pay payable for GS-15 of the General Schedule." 5 U.S.C. § 13103(f)(3). Among other obligations, a covered individual must file an annual financial disclosure report by May 15 of the year following the reporting year ("Annual Report"), 5 U.S.C. § 13103(d); 5 C.F.R. § 2634.201(a) (2025), and he must file a report "on or before the 30th day after termination of employment," unless he has accepted another position covered by the EIGA ("Termination Report"), 5 U.S.C. § 13103(e); 5 C.F.R. § 2634.201(e).

Failure to comply with the EIGA may result in civil and criminal penalties. 5 U.S.C. § 13106(a). As relevant here, the Attorney General may bring a civil action against "any individual . . . who knowingly and willfully fails to file or report any information that such individual is required to report." *Id.* § 13106(a)(1). In 2007, Congress increased the maximum civil penalty from $10,000 to $50,000, which, after adjustment for inflation, was a maximum penalty of $71,316 at the time the United States filed suit.[1] *See* Honest Leadership and Open Government Act of 2007, Pub. L. No. 110-81, 121 Stat. 735, 775-76 (Sep. 14, 2007); 5 U.S.C. § 13106(a)(1); 5 C.F.R. § 2634.701(b) (2023); *see also* 28 U.S.C. § 2461 note (requiring adjustment of maximum penalty for inflation).

---

[1] The current inflation-adjusted maximum penalty is $75,540. *See* 5 C.F.R. § 2634.701(b) (2025).

## II.    FACTUAL BACKGROUND

From 1986 to 2004, Mr. Abbott held positions in the federal government in which he "carried significant responsibility in administering ethics in general, and specifically, the Ethics in Government Act."  ECF No. 23-2, at 1 ¶ 1; ECF No. 28-1, at 1 ¶ 1.  He timely filed his required financial disclosure reports "every year since at least 1990."  ECF No. 23-2, at 1 ¶ 1; ECF No. 28-1, at 1 ¶ 1; *see* ECF No. 22-3, at 2 ¶ 3 (noting that Mr. Abbott had satisfied his annual reporting obligations from 2007 to 2020).[2]

In September 2017, President Donald J. Trump nominated Mr. Abbott to serve as a Member of the Federal Labor Relations Authority ("FLRA").  ECF No. 23-2, at 2 ¶ 3; ECF No. 28-1, at 2 ¶ 3.  After being confirmed by the Senate, Mr. Abbott was sworn in on December 11, 2017.  ECF No. 1 ¶ 12; ECF No. 22-2, at 1 ¶ 1; ECF No. 23-2, at 2 ¶ 3; ECF No. 28-1, at 2 ¶ 3.  His term was set to expire on July 1, 2020, but, by statute, it carried over until his successor took office.  ECF No. 23-2, at 2 ¶ 3; ECF No. 28-1, at 2 ¶ 3; *see* 5 U.S.C. § 7104(c).  Upon the appointment of his successor on May 17, 2022, Mr. Abbott separated from the federal government.  ECF No. 1 ¶ 16; ECF No. 22-2, at 1-2 ¶ 5; ECF No. 23-2, at 2 ¶ 3; ECF No. 28-1, at 2 ¶ 3.[3]

As an FLRA Member, Mr. Abbott's salary was greater than 120 percent of the minimum rate of basic pay for GS-15,[4] so he was required to file annual financial disclosure reports.  ECF No. 1 ¶¶ 13-14; ECF No. 22-2, at 1 ¶¶ 2-3; ECF No. 23-2, at 3 ¶ 12; ECF No. 28-1, at 4 ¶ 12; *see*

---

[2] When citing ECF Nos. 22-3 and 22-4, the court uses the page numbers generated by CM/ECF.

[3] Mr. Abbott takes issue with the circumstances of his separation from the FLRA, contending that it was retaliatory.  *See* ECF No. 23-2, at 2-3 ¶¶ 4-9; ECF No. 23-3, at 3-6 ¶¶ 6-10.  The Department of Justice ("DOJ") contends—and the court agrees—that the details of Mr. Abbott's separation are immaterial to the present dispute.  ECF No. 28-1, at 2-3 ¶¶ 4-9.

[4] Mr. Abbott's annual salary was $180,570, which is greater than 120% of the then-basic GS-15 rate of $110,460.  ECF No. 1 ¶ 13; ECF No. 22-2, at 1 ¶ 2.

5 U.S.C. § 13103(d), (f)(3). Mr. Abbott complied with his annual reporting obligations from 2017 to 2020. ECF No. 22-3, at 2 ¶ 3; ECF No. 23-2, at 1 ¶ 1; ECF No. 28-1, at 1 ¶ 1.

Mr. Abbott was required to file his Annual Report for the 2021 calendar year by the statutory deadline of May 15, 2022. ECF No. 1 ¶ 14; ECF No. 22-2, at 1 ¶ 4; ECF No. 23-2, at 3 ¶ 12; ECF No. 28-1, at 4 ¶ 12; *see* 5 U.S.C. § 13103(d). He did not meet this deadline, and on May 16, the FLRA's Alternative Designated Agency Ethics Official ("ADAEO"), Rebecca Osborne, emailed Mr. Abbott to ask whether he needed a forty-five-day extension for his Annual Report. ECF No. 1 ¶ 15; ECF No. 22-3, at 1 ¶ 1. Mr. Abbott did not respond. ECF No. 1 ¶ 15.

Mr. Abbott was also required to file his Termination Report by June 16, 2022. ECF No. 1 ¶ 17; ECF No. 22-2, at 2 ¶ 6; ECF No. 23-2, at 4 ¶ 13; ECF No. 28-1, at 4-5 ¶ 13; *see* 5 U.S.C. § 13103(e). On May 19, two days after his separation from the FLRA, Ms. Osborne sent an email to Mr. Abbott at his personal email address and instructed him to file a combined Annual and Termination Report that covered the period from January 1, 2021 through May 17, 2022 by June 30. ECF No. 1 ¶ 19; ECF No. 22-3, at 3 ¶ 9, 8 (Ex. C); ECF No. 23-2, at 4 ¶ 14; ECF No. 28-1, at 5 ¶ 14. Mr. Abbott also did not respond to this email. ECF No. 1 ¶ 19; ECF No. 22-3, at 3 ¶ 9.

In the days leading up to the June 30, 2022 deadline, Ms. Osborne followed up with Mr. Abbott via email and left a voicemail at his personal phone number. ECF No. 1 ¶¶ 20-21; ECF No. 22-3, at 3 ¶¶ 9-11, 10 (Ex. D), 13 (Ex. E). On June 29, Mr. Abbott responded to Ms. Osborne's email and asked if he owed "1 or 2 reports." ECF No. 22-3, at 3 ¶ 12, 15 (Ex. F); *see* ECF No. 1 ¶ 22; ECF No. 23-2, at 4 ¶ 16; ECF No. 28-1, at 5 ¶ 16. Ms. Osborne responded shortly thereafter, explaining that he was required to submit one combined report covering

4

January 1, 2021 through May 17, 2022.  ECF No. 1 ¶ 23; ECF No. 22-3, at 3 ¶ 13, 15 (Ex. F).  She granted Mr. Abbott another forty-five-day extension, until August 14, to file the combined report and indicated that this deadline was "the outer-limit of extensions that we give."  ECF No. 1 ¶ 23; ECF No. 22-3, at 3 ¶ 13, 15 (Ex. F); ECF No. 23-2, at 4 ¶ 15; ECF No. 28-1, at 5 ¶ 15.

On July 28, 2022, Ms. Osborne sent another email to Mr. Abbott reminding him that his combined report was due on August 14 and that no additional extension would be given.  ECF No. 1 ¶ 24; ECF No. 22-3, at 3 ¶ 14, 19 (Ex. G).  Mr. Abbott did not file his combined report by the deadline.  ECF No. 1 ¶ 25; ECF No. 22-2, at 2 ¶ 10; ECF No. 23-2, at 4 ¶ 15; ECF No. 28-1, at 5 ¶ 15.

After Mr. Abbott missed the filing deadline, the government made various attempts to contact him about the overdue report.  Beginning August 14, 2022, the government sent weekly automated reminders to Mr. Abbott's personal email explaining that his report was past due.  ECF No. 1 ¶ 25; ECF No. 22-2, at 2 ¶ 11.  On August 15, Ms. Osborne again emailed Mr. Abbott asking when he would be able to submit the report.  ECF No. 1 ¶ 26; ECF No. 22-3, at 4 ¶ 16, 23 (Ex. H).  In late August, the Executive Director of the FLRA sent a letter by certified mail to Mr. Abbott's home address asking him to complete the report "as soon as possible."  ECF No. 22-3, at 4 ¶ 17, 27-30 (Ex. I); *see* ECF No. 1 ¶ 27.  The letter also noted that the FLRA could not give extensions beyond the ninety days it had already provided.  ECF No. 22-3, at 4 ¶ 17, 27-28 (Ex. I).  A member of Mr. Abbott's household signed the return receipt.  *Id.* at 30.  And in September and October, Ms. Osborne continued to email Mr. Abbott about the report.  ECF No. 1 ¶¶ 28-29; ECF No. 22-3, at 4 ¶¶ 18-19, 32 (Ex. J), 35 (Ex. M).  Mr. Abbott did not respond to any of these communications. ECF No. 1 ¶¶ 28-29; ECF No. 22-3, at 4 ¶¶ 18-19.

On November 25, 2022, Ms. Osborne emailed Mr. Abbott yet again, this time advising him that if he did not submit the combined report within a week, the "next step w[ould] be to refer this matter to the Department of Justice [("DOJ")]."  ECF No. 1 ¶ 30; ECF No. 22-3, at 4 ¶ 20, 37 (Ex. O); ECF No. 23-2, at 4 ¶ 17; ECF No. 28-1, at 5 ¶ 17.  Mr. Abbott responded that same day:

> I know that you mean well and I have nothing against you.  But really?  Why would they refer it to DOJ??  They already got rid of me just like they wanted to.  I will be doing it but they have no desire to do that.  I am not even convinced that they have jurisdiction to do anything.  They might well want to invest those resources into prosecuting Hunter Biden, rather than harassing President Trump and those who worked in his administration.

ECF No. 1 ¶ 30 (typo omitted); ECF No. 22-3, at 4-5 ¶ 20, 39 (Ex. P); ECF No. 23-2 ¶ 16; ECF No. 28-1, at 5 ¶ 16.  Ms. Osborne responded that a referral to the DOJ was the next step in the process if Mr. Abbott did not file his report.  ECF No. 1 ¶ 31; ECF No. 22-3, at 5 ¶ 21, 41 (Ex. Q).

In January 2023, the Office of Government Ethics ("OGE") sent a letter to the FLRA noting that Mr. Abbott still had not filed his report.  ECF No. 1 ¶ 32; ECF No. 22-3, at 5 ¶ 22, 46 (Ex. S).  The letter explained that the FLRA "must collect the report . . . from Mr. Abbott in order to certify and forward the report to OGE as soon as possible[] or make the appropriate referral to the Department of Justice."  ECF No. 1 ¶ 32; ECF No. 22-3, at 5 ¶ 22, 46 (Ex. S).  Ms. Osborne forwarded this letter to Mr. Abbott via email on January 30, 2023, advising him that the FLRA would refer the matter to the DOJ if he did not file his combined report.  ECF No. 1 ¶ 33; ECF No. 22-3, at 5 ¶ 23, 48-49 (Ex. T); ECF No. 28-1, at 5-6 ¶ 18.  Once again, Mr. Abbott did not respond.  ECF No. 1 ¶ 33; ECF No. 22-3, at 5 ¶ 23.  Ms. Osborne referred Mr. Abbott's case to the DOJ on March 22, 2023.  ECF No. 1 ¶ 33; ECF No. 23-2, at 4 ¶ 18; ECF No. 28-1, at 5-6 ¶ 18; ECF No. 28-2 ¶ 10.

By certified mail delivered April 28, 2023, the DOJ informed Mr. Abbott that it had "authorized the filing of a civil action against [him] to require [his] compliance with [his] EIGA obligations and to obtain a civil penalty."  ECF No. 22-4, at 1 ¶¶ 2-3, 4 (Ex. A), 6 (Ex. B).  The DOJ stated that it would file suit "on or about May 30, 2023" and offered Mr. Abbott the opportunity to resolve the matter without litigation by contacting the assigned DOJ attorney no later than May 12, 2023.  *Id.* at 4.  Mr. Abbott did not respond by the May 12 deadline.  ECF No. 7, at 8.

On May 31, 2023, the DOJ filed its complaint against Mr. Abbott.  ECF No. 1.  Also on May 31, Mr. Abbott filed his required combined report.[5]  ECF No. 22-2, at 3 ¶ 14; ECF No. 23-2, at 5 ¶ 22; ECF No. 28-1, at 8 ¶ 22; *see* ECF No. 9 (report filed under seal).  Because Mr. Abbott's report was filed late, the OGE could not review it and closed Mr. Abbott's report without certifying it.  ECF No. 22-2, at 3 ¶ 15; ECF No. 22-3, at 5 ¶ 27.

### III.     PROCEDURAL HISTORY

As noted, the DOJ filed suit on May 31, 2023, seeking an order requiring Mr. Abbott to file his combined report and pay a civil penalty and a $200 late-filing fee.  ECF No. 1, at 7.  Service was effected on June 9, and Mr. Abbott's deadline to respond to the complaint was June 30.  ECF

---

[5] Mr. Abbott objects to the DOJ's statements that he "did not submit the required financial reporting at any time prior to the commencement of this litigation on May 31, 2023" and that he electronically submitted his report "[s]hortly after the complaint was filed."  ECF No. 22-2, at 3 ¶¶ 13-14; *see* ECF No. 23-2, at 6-7 ¶¶ 13-14.  He contends that he did not know that the DOJ had already filed suit against him when he filed his combined report.  ECF No. 23-2, at 5 ¶ 22.  The court deems this timing dispute immaterial because the parties do not dispute that Mr. Abbott filed his report on May 31, 2023—nine months after the twice-extended August 14, 2022 deadline.  *See* ECF No. 22-2, at 2 ¶ 10; ECF No. 23-2, at 4-5 ¶¶ 15, 22; ECF No. 28-1, at 5 ¶ 15.  Nor do the parties dispute that Mr. Abbott received notice on April 28, 2023 that the DOJ intended to file suit "on or about May 30, 2023."  ECF No. 22-4, at 1 ¶¶ 2-3, 4 (Ex. A), 6 (Ex. B); ECF No. 28-1, at 8 ¶ 22; *see generally* ECF No. 23-2.

No. 3, at 1-2.  Mr. Abbott failed to appear or respond to the complaint by the deadline.  On July 7, Mr. Abbott sent an email to the DOJ noting that he had filed his financial disclosure report and requesting that the agency "withdraw the matter avoiding the necessity of filing a Motion to Dismiss."  ECF No. 22-4, at 1 ¶ 4, 9 (Ex. C); *see* ECF No. 23-2, at 6 ¶ 24; ECF No. 28-1, at 7-8 ¶ 21.  The DOJ responded that it would not withdraw the complaint but that it was "willing to discuss any reasonable settlement offer for the civil penalty sought" or "a reasonable extension of" Mr. Abbott's deadline to respond to the complaint.  ECF No. 22-4, at 1 ¶ 4, 8 (Ex. C).  Mr. Abbott did not respond to the email.

The DOJ subsequently requested that the Clerk of Court enter a default against Mr. Abbott, ECF No. 4, which the Clerk did on September 7, 2023, ECF No. 6.  The DOJ moved for a default judgment on October 31.  ECF No. 7.

The case was reassigned to the undersigned in December 2023.  Dec. 14, 2023 Docket Entry.  On December 15, Mr. Abbott appeared in the case and filed motions for mediation and an extension of time to respond to the DOJ's motion for default judgment.  ECF Nos. 10, 11.  The DOJ did not oppose Mr. Abbott's motion for mediation, ECF No. 12, at 2, and the court referred the matter to a magistrate judge for mediation, Jan. 9, 2024 Minute Order.  After mediation proved unsuccessful, ECF Nos. 16, 20, the court denied the DOJ's motion for default judgment, explaining that a default judgment was not appropriate because Mr. Abbott was "no longer 'essentially unresponsive,'" Aug. 29, 2024 Minute Order (quoting *Kim v. Andy Lee Liquor, Inc.*, No. 20-CV-3283, 2023 WL 6388930, at *3 (D.D.C. Sep. 29, 2023)).  The court noted, however, that Mr. Abbott would still "'have to face the consequences of [his] default'—which he ha[d] not sought to set aside—meaning that '[he] is deem[ed] to [have] admit[ted] every well-pleaded

allegation in the complaint.'" *Id.* (internal quotation marks omitted) (quoting *Kim*, 2023 WL 6388930, at *3).

The parties thereafter briefed cross-motions for summary judgment. ECF Nos. 22, 23, 25, 27 to 31. In its motion, the DOJ seeks a civil penalty of $40,000 against Mr. Abbott. ECF No. 22-1, at 1. In his motion, Mr. Abbott argues that he did not willfully fail to report in violation of the EIGA and that, if the court finds otherwise, only a *de minimis* penalty is warranted. ECF No. 23-1, at 1. The motions are ripe for disposition. ECF Nos. 22, 23, 25, 27 to 31.

## IV.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see* Fed. R. Civ. P. 56(a). A material fact is one which "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine'" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the moving party bears the burden of demonstrating "the absence of a genuine issue of material fact" in dispute, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), while the nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor, *see Liberty Lobby*, 477 U.S. at 248 (1986); *see also Allen v. Johnson*, 795 F.3d 34, 38-39 (D.C. Cir. 2015).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing*

*Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (quoting *Liberty Lobby*, 477 U.S. at 255); *see Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 295-96 (D.C. Cir. 2015).  Accordingly, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tolan v. Cotton*, 572 U.S. 650, 651 (2014) (per curiam) (alteration in original) (quoting *Liberty Lobby*, 477 U.S. at 255).  However, the nonmoving party must still establish more than "[t]he mere existence of a scintilla of evidence in support of [his] position," *Liberty Lobby*, 477 U.S. at 252, and may not rely on "mere allegations" or conclusory statements, *Equal Rts. Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011) (quoting *Sierra Club v. Env't Prot. Agency*, 292 F.3d 895, 898-99 (D.C. Cir. 2002)).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted).

When parties file cross-motions for summary judgment, each motion is viewed separately in the light most favorable to the nonmoving party, with the court "determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720 (3d ed. 2016)); *see Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1213 (10th Cir. 2016); *Pac. Indem. Co. v. Deming*, 828 F.3d 19, 23 (1st Cir. 2016).

## V.    DISCUSSION

### A.    Liability

The EIGA imposes civil liability on an individual if three requirements are met: (1) the individual is "required to file a report pursuant to 5 U.S.C. § 13104"; (2) the individual "failed to file the report"; and (3) his failure is "'knowing[] and willful[].'"  *United States v. Neelon*, No. 23-CV-3177, 2024 WL 2153099, at *3 (D.D.C. May 14, 2024) (quoting 5 U.S.C. § 13106(a)).

Here, there is no dispute that Mr. Abbott satisfies the first two elements. As an FLRA Member, Mr. Abbott was required to file an Annual Report and a Termination Report because he "was an employee in the Executive Branch whose compensation exceeded '120 percent of the minimum rate of basic pay payable for GS-15 of the General Schedule.'" *Id.* at \*3 (quoting 5 U.S.C. § 13103(f)); *see* ECF No. 1 ¶¶ 13-14, 17; ECF No. 22-2, at 1 ¶¶ 2-3; ECF No. 23-2, at 3 ¶¶ 12-13; ECF No. 28-1, at 4-5 ¶¶ 12-13. Mr. Abbott failed to file these reports in a timely manner, despite being given two extensions to do so. ECF No. 1 ¶¶ 19, 23-25; ECF No. 22-2, at 2 ¶ 10; ECF No. 23-2, at 4-5 ¶¶ 15, 22; ECF No. 28-1, at 5 ¶ 15. Mr. Abbott filed his combined report on May 31, 2023, more than nine months after his final deadline of August 14, 2022. ECF No. 22-2, at 2-3 ¶¶ 10, 14; ECF No. 23-2, at 4-5 ¶¶ 15, 22; ECF No. 28-1, at 5 ¶ 15. Mr. Abbott also does not dispute that his failure to timely report was knowing. *See* ECF No. 23-1, at 8-9; ECF No. 30, at 2-3. Nor could he, considering the government's copious reminders—which he does not dispute receiving—and his admitted familiarity with the EIGA's reporting requirements. ECF No. 23-3, at 2 ¶ 2 ("From 1986 until 2004, every position I held carried significant responsibility in administering ethics in general, and specifically, the EIGA."); *see generally* ECF No. 23-2. Accordingly, the only question before the court is whether Mr. Abbott "willfully" failed to report.[6]

Generally, "[a]n individual knowingly and willfully fails to comply with the EIGA requirements when that individual intentionally disregards the statute or is indifferent to its requirements." *United States v. Manigault Newman*, 594 F. Supp. 3d 1, 6 (D.D.C. 2022) (alteration in original) (quoting *United States v. Lairy*, No. 19-CV-2488, 2020 WL 4039176, at \*2

---

[6] As a result of his default, Mr. Abbott is deemed to have admitted each of the well-pleaded allegations in the complaint. *United States v. All Assets Held at Bank Julius Baer & Co.*, 743 F. Supp. 3d 204, 218 (D.D.C. 2024). However, the issue of whether Mr. Abbott's noncompliance was "willful" is a legal question that this court must resolve.

(D.D.C. July 17, 2020)).  A violation is considered willful if "the defendant acted with knowledge that his conduct was unlawful."  *Id.* (quoting *Bryan v. United States*, 524 U.S. 184, 191-92 (1998)). This court has "consistently found knowing and willful violations of the EIGA when defendants failed to take action despite multiple communications from the Government."  *Neelon*, 2024 WL 2153099, at *3; *see, e.g.*, *Manigault Newman*, 594 F. Supp. 3d at 6; *United States v. Hunter*, No. 14-CV-442, ECF No. 8, at 3 (D.D.C. Aug. 27, 2014).

As support that Mr. Abbott's violation was willful, the DOJ provides a declaration from Ms. Osborne, with accompanying exhibits, to argue that Mr. Abbott was "well aware of [his] obligation to file [his report] . . . having received countless reminders" but nevertheless failed to do so in a timely manner.  ECF No. 22-1, at 13 (quoting *Manigault Newman*, 594 F. Supp. 3d at 6); *see* ECF No. 22-3, at 3-5 ¶¶ 9-11, 13-21, 23, 8 (Ex. C), 10 (Ex. D), 13 (Ex. E), 15 (Ex. F), 19 (Ex. G), 23-25 (Ex. H), 27-30 (Ex. I), 32 (Ex. J), 35 (Ex. M), 37 (Ex. O), 41 (Ex. Q), 48 (Ex. T). The declaration and exhibits establish that, as in *Neelon*, the government attempted to reach Mr. Abbott via "automated email reminders, emails from ethics officials, and certified letters" for approximately one year.  2024 WL 2153099, at *3.  Mr. Abbott also "acknowledged receipt of at least one of the email reminders" that Ms. Osborne had sent him leading up to the August 14, 2022 deadline.  *Id.*; *see* ECF No. 22-3, at 3 ¶ 12, 15 (Ex. F); ECF No. 23-2, at 4 ¶ 16; ECF No. 28-1, at 5 ¶ 16.  Specifically, in his June 29 email, Mr. Abbott asked whether he needed to submit "1 or 2 reports," ECF No. 22-3, at 15, which "clearly demonstrated that [he] knew what was required" of him in terms of filing both the Annual and Termination Reports, *United States v. Chaney*, No. 04-CV-2219, 2005 WL 8178308, at *2 (D.D.C. Feb. 28, 2005).  And after the August 14 deadline had passed, Mr. Abbott responded to another email advising him that the matter would be referred to the DOJ if he did not submit his combined report, but he still did not submit the

required report or request assistance with doing so.  ECF No. 22-3, at 4-5 ¶ 20, 39 (Ex. P); ECF No. 23-2, at 4 ¶¶ 16-17; ECF No. 28-1, at 5 ¶¶ 16-17.  By responding that he "w[ould] be doing it," ECF No. 22-3, at 39, and then failing to do so, it is hard to characterize Mr. Abbott's conduct as anything but willful.

Against the DOJ's evidence, Mr. Abbott argues that his untimely filing was not willful because it was "due to extenuating circumstances beyond his control," namely, that the FLRA denied him access to his files after he separated from the federal government, which hindered his ability to complete the report, and that personal circumstances in 2023 delayed his submission. ECF No. 23-1, at 8-9; ECF No. 30, at 2-3.  These allegations fail to create a genuine dispute of material fact about whether Mr. Abbott's failure to timely file was willful.

Mr. Abbott first contends that, after his termination, FLRA leadership denied him access to his office files and computer, which contained his prior financial disclosure reports, "thereby preventing him from being certain that his combined financial disclosure report would be accurate and consistent."  ECF No. 23-1, at 8-9.  While Mr. Abbott claims that "the FLRA never gave [him] access to the documents he needed," *id.* at 10, he points to scant evidence that he attempted to obtain those materials, relying only on his own declaration, in which he states that he and Ms. Osborne spoke about these issues, *see* ECF No. 23-3, at 6-7 ¶¶ 12-13.  The DOJ counters with an affidavit from Ms. Osborne stating that her only conversations with Mr. Abbott after his departure from the FLRA were his two email responses in June and November 2022, which did not mention these issues, and that the two did not have any oral conversations after his separation. ECF No. 28, at 4-5; ECF No. 28-2, at 2 ¶¶ 4-9.

Drawing all inferences in Mr. Abbott's favor, at best Mr. Abbott can show that Ms. Osborne was aware of his inability to access materials in his office, but there is no indication

that he sought her assistance in retrieving any needed materials. In a similar circumstance where the defendant "made no effort to retrieve th[e] documents" later alleged to have been necessary to complete a financial disclosure under the EIGA, the court found the factual dispute "immaterial," explaining that "even if the documents were necessary to complete [the] report . . . that fact would not refute that [the defendant] willfully disregarded the EIGA's requirements." *Manigault Newman*, 594 F. Supp. 3d at 7.[7] What is more, as the DOJ explains, Mr. Abbott "should have been aware that his prior financial submissions [we]re available upon request through the OGE website," ECF No. 28, at 4-5, indicating that any dispute about his ability to access materials in his office is not material because he could have procured them from another source.

Mr. Abbott next claims that he was unable to report because of "personal circumstances" including being out of the country for three-and-a-half weeks in February and March 2023 and being a victim of an assault and battery in May 2023. ECF No. 23-1, at 9. These allegations, too, fail to create a genuine dispute of material fact. Mr. Abbott's Annual Report was initially due on May 15, 2022, and his Termination Report was due on June 16, 2022. *See* ECF No. 1 ¶¶ 14, 17; ECF No. 22-2, at 1-2 ¶¶ 4, 6; ECF No. 23-2, at 3-4 ¶¶ 12-13; ECF No. 28-1, at 4-5 ¶¶ 12-13. After being granted two extensions—the maximum permitted by the EIGA, *see* 5 U.S.C. § 13103(g); 5 C.F.R. § 2634.201(g)—his combined report was due on August 14, 2022, but Mr. Abbott failed to file his report by this deadline, nearly six months before he encountered any challenging personal circumstances, *see* ECF No. 1 ¶¶ 19, 25; ECF No. 22-2, at 2 ¶ 10; ECF No. 23-2, at 4 ¶¶ 14-15; ECF No. 28-1, at 5 ¶¶ 14-15. There is thus no genuine dispute that

---

[7] As the DOJ notes, the fact that Mr. Abbott eventually submitted his combined report without access to materials in his office also "belies his claim of the need for his office materials." ECF No. 28, at 4.

Mr. Abbott would have timely filed his combined report if he had not been out of the country in February and March 2023 and assaulted in May 2023, because he had already been out of compliance with the EIGA for six months. *Cf. Manigault Newman*, 594 F. Supp. 3d at 6 (concluding that the defendant's failure to file her report for more than one year after the statutory deadline was willful); *Lairy*, 2020 WL 4039176, at *3 (finding a knowing and willing violation where the defendant "intentionally disregarded the statute by failing to file the required report for over six months," even after experiencing technical difficulties and a government shutdown that made technical support unavailable).

Finally, Mr. Abbott argues that his violation was not "ongoing" because he filed his report when threatened with legal action. ECF No. 30, at 2-3. While that fact may bear on the appropriate penalty, *see Chaney*, 2005 WL 8178308, at *2, it does not refute the fact that Mr. Abbott, "at best[,] was indifferent to the EIGA's filing requirements," *United States v. Gant*, 268 F. Supp. 2d 29, 33 (D.D.C. 2003). Mr. Abbott also represents that, having administered the EIGA in previous positions in the federal government, he "recognized the importance of the EIGA requirements," ECF No. 23-1, at 8, leaving the court hard-pressed to conclude that he did not intentionally flout his reporting obligations under the statute.[8] Accordingly, the court concludes that Mr. Abbott willfully failed to file his financial disclosure report.

### B.    Penalty

Having concluded that Mr. Abbott violated the EIGA, "all that remains is the question of the appropriate penalty." *Manigault Newman*, 594 F. Supp. 3d at 8. The EIGA leaves the amount

---

[8] In fact, Mr. Abbott once served in the same position that Ms. Osborne held while attempting to obtain his compliance. *See* ECF No. 23-3, at 2 ¶ 3 (noting that Mr. Abbott previously served as the ADAEO at three Department of Defense agencies).

of the civil penalty to the court's discretion, and "courts generally have tailored the penalty to the offense and attendant circumstances." *Gant*, 268 F. Supp. 2d at 33. The DOJ argues that Mr. Abbott should be held liable for $40,000—about 56% of the inflation-adjusted statutory maximum at the time of the DOJ's complaint and about 53% of the current maximum penalty. ECF No. 22-1, at 4, 19 n.4. The court agrees.

In determining the penalty under the EIGA, courts consider factors including (1) whether the defendant's noncompliance was "flagrant and ongoing," *Lairy*, 2020 WL 4039176, at *3 (quoting *Gant*, 268 F. Supp. 2d at 34); *see, e.g.*, *Manigault Newman*, 594 F. Supp. 3d at 8-9; *Chaney*, 2005 WL 8178308, at *2-3; (2) the defendant's history of compliance with the EIGA, *see, e.g.*, *Neelon*, 2024 WL 2153099, at *3; (3) whether the defendant was "motivated by a desire to avoid reporting transactions," *id.*; *see e.g.*, *Lairy*, 2020 WL 4039176, at *3; and (4) the defendant's financial resources, *see, e.g.*, *Manigault Newman*, 594 F. Supp. 3d at 9; *Lairy*, 2020 WL 4039176, at *3.[9] The court addresses each factor in turn.

---

[9] The parties dispute the precise formulation of the factors that govern the court's determination of a civil penalty under the EIGA. *Compare* ECF No. 23-1, at 7, *and* ECF No. 30, at 3-4, *with* ECF No. 28, at 7. The DOJ applies the five factors from *Securities & Exchange Commission v. Milan Group*, 124 F. Supp. 3d 21, 25 (D.D.C. 2015)—four of which the DOJ argues weigh in favor of a significant penalty, ECF No. 22-1, at 14-15. These factors are: "(1) the egregiousness of the defendant's conduct; (2) the degree of scienter; (3) whether the conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the conduct was isolated or recurrent; and (5) whether the penalty should be reduced due to demonstrated current and future financial condition." *Milan Grp.*, 124 F. Supp. 3d at 25. Mr. Abbott counters that the *Milan Group* factors are limited to the securities fraud context and argues that in EIGA cases, courts consider: (1) whether the violation was flagrant and ongoing; (2) the filer's prior history of compliance with the EIGA; (3) whether the filer was motivated by a desire to avoid reporting transactions; and (4) the filer's financial resources. ECF No. 30, at 3-4. The DOJ replies that the analysis is the same under either approach, ECF No. 28, at 7-8, so the court will use Mr. Abbott's construction of the factors.

*Flagrant and ongoing violation.*  The DOJ argues that Mr. Abbott's conduct was egregious and flagrant because he refused to file his report for over a year, "cast unfounded aspersions on the FLRA's attempt to obtain his compliance, and then failed to avail himself of numerous opportunities to come into compliance before litigation commenced."  ECF No. 22-1, at 15; ECF No. 28, at 8-11.  The DOJ also points to Mr. Abbott's "gamesmanship" in submitting his report "right after the complaint was filed," comparing Mr. Abbott to the defendant in *Manigault Newman* who received the maximum penalty after filing her termination report more than a year-and-a-half after the deadline and about two-and-a-half months after the DOJ filed suit.  ECF No. 22-1, at 15-16; *see Manigault Newman*, 594 F. Supp. 3d at 3, 8-9.

Mr. Abbott argues that his violation was not "ongoing" because he filed his report before he learned of the DOJ's suit, distinguishing his situation from other, more flagrant violators, such as the defendants in *Gant*, *Lairy*, and *Neelon*, who never filed their reports.  ECF No. 23-1, at 9-11; ECF No. 30, at 2, 4.  Specifically, he contends that "[a]n individual who files his EIGA report when *threatened* with legal action"—as opposed to during the course of litigation—"has not engaged in an ongoing violation."  ECF No. 23-1, at 9 (emphasis added).  Mr. Abbott further argues that his conduct was not flagrant because he explained his extenuating circumstances to Ms. Osborne and DOJ counsel.  *Id.*; ECF No. 30, at 4.

The court agrees with the DOJ that Mr. Abbott's noncompliance over the course of nine months after his final deadline despite repeated reminders from Ms. Osborne and others is sufficient to deem his conduct flagrant and ongoing.  While Mr. Abbott eventually did file his report, an individual is not entitled to a *de minimis* penalty following months of recalcitrance simply because he complies once the DOJ threatens to file suit against him.  Such a rule would contravene the EIGA's "deterrent aims," *Manigault Newman*, 594 F. Supp. 3d at 9, and cause

17

agency ethics officials and the DOJ to expend resources that would not be necessary in the face of timely compliance.[10]    Here, for example, Ms. Osborne spent months attempting to reach Mr. Abbott, and the DOJ attempted to resolve the matter without filing suit.    Additionally, as a result of Mr. Abbott's late filing, the OGE was unable to certify the report, frustrating the EIGA's aims.    ECF No. 22-2, at 3 ¶ 15; ECF No. 22-3, at 5 ¶ 27.

Nor do Mr. Abbott's extenuating circumstances warrant a lesser penalty.    As the court has already explained, Mr. Abbott does not contend that he asked for assistance in gaining access to his files in order to complete his report, despite Ms. Osborne's considerable outreach.    *See supra* pp. 13-14.    And Mr. Abbott's claim that he spoke with DOJ counsel about his personal circumstances is refuted by the record.    Mr. Abbott avers that he spoke with "Assistant U.S. Attorney Alexander Resar from February to May of 2023" about his extenuating circumstances.    ECF No. 23-3, at 7-8 ¶ 14.    But, as the DOJ's exhibits demonstrate, Mr. Abbott's case was not referred to the DOJ until March 2023, Mr. Resar did not join the DOJ until March 2023, and Mr. Abbott was not given Mr. Resar's contact information until late April 2023.    ECF No. 28-3, at 1-2 ¶¶ 3-7.    Mr. Abbott has no response to these inconsistencies, *see generally* ECF No. 30, and at summary judgment, the court need not credit statements that are "blatantly contradicted by the record," *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[10] In support of his argument, Mr. Abbott relies on a District of Wyoming case, *United States v. Tarver*, 642 F. Supp. 1109 (D. Wyo. 1986), which involved a defendant whose violation was not ongoing because he "complied when threatened with legal action," *Chaney*, 2005 WL 8178308, at *2 (citing *Tarver*); *see* ECF No. 23-1, at 9; ECF No. 30, at 3.    *Tarver*, however, is easily distinguishable from this case, as the defendant there was only "twice informed" of his obligations under the EIGA.    642 F. Supp. at 1111.    Mr. Abbott, in contrast, received at least nine direct communications from Ms. Osborne, ECF No. 22-3, at 3-5 ¶¶ 9-11, 13-14, 16, 18-21, 23, on top of automated weekly reminders, *id.* at 4 ¶ 15, and certified letters from the Executive Director of the FLRA, *id.* at 4 ¶ 17, and the DOJ, ECF No. 22-4, at 1 ¶ 2.

*History of compliance*.  The DOJ does not dispute Mr. Abbott's track record of compliance with the EIGA, *see* ECF No. 23-2, at 1 ¶ 1; ECF No. 28-1, at 1 ¶ 1, and instead argues that his conduct in this litigation reflects "an extended pattern of obstinance," ECF No. 28, at 11-12. Mr. Abbott argues that because he complied with his annual filing obligations for more than three decades and eventually filed his combined report, he deserves a "small fraction" of the $12,300 penalty imposed in *Neelon*, where the defendant had only a seven-year history of compliance and never filed the required report that was the subject of litigation.  ECF No. 23-1, at 10-11; *see Neelon*, 2024 WL 2153099, at *1-3.  The court credits Mr. Abbott's record of compliance with the EIGA but, for the reasons already noted, concludes that the fact that Mr. Abbott ultimately filed his required report does not alone justify a *de minimis* penalty.  *Cf. Manigault Newman*, 594 F. Supp. 3d at 8-9 (imposing maximum penalty where the defendant filed her termination report two-and-a-half months after the DOJ filed suit).  Additionally, whereas the defendant in *Neelon* was entirely non-responsive, resulting in a minimal expenditure of government resources to secure the $12,300 default judgment, Mr. Abbott caused the government to expend significant resources in pursuing this case, including copious outreach ahead of litigation, default proceedings that would later be set aside, a failed mediation, and summary judgment briefing.

*Motive to avoid reporting transactions*.  The DOJ contends that Mr. Abbott's conduct reflects "some desire to 'avoid public reporting'" because Mr. Abbott was motivated in part by his spouse's reluctance to provide information about assets held in trust.  ECF No. 28, at 12 (quoting *Lairy*, 2020 WL 4039176, at *3).  The DOJ also argues that Mr. Abbott's failure to report until May 2023 "evinc[es] motivation to avoid disclosure."  *Id.* at 13.  Mr. Abbott responds that his combined report reveals "garden-variety financial assets" and transactions that had all previously been reported in his Annual Report for the 2020 calendar year.  ECF No. 23-1, at 11.  The court

agrees that Mr. Abbott's conduct does not suggest "a sophisticated financial operator with a strong motive to hide problematic transactions," *Lairy*, 2020 WL 4039176, at *3; *see* ECF Nos. 9, 27, 27-1 (declaration and disclosure reports filed under seal), and concludes that this factor does not warrant a significant penalty.

*Financial resources.*  Finally, the DOJ argues that Mr. Abbott has "significant financial resources" that warrant a higher penalty, pointing to his salary as an FLRA Member and the assets listed in his disclosure reports.  ECF No. 28, at 13-14 (quoting *Manigault Newman*, 594 F. Supp. 3d at 9); *see* ECF No. 22-1, at 18-19.  Mr. Abbott counters that he has "modest resources" and that the bulk of the assets listed in his combined report are in a trust administered by his spouse for the benefit of his spouse and their children, not for him.  ECF No. 23-1, at 12.  He also notes that "salary, alone, does not determine someone's ability to pay a substantial fine" and requests that the court consider his financial obligations to his children.  ECF No. 30, at 6-7.

The court agrees with the DOJ that, as with the defendant in *Manigault Newman*, Mr. Abbott "earned a substantial salary" in his covered role, which factored into the appropriate penalty.  594 F. Supp. 3d at 9.  While, in *Manigault Newman*, the DOJ sought the then-statutory maximum penalty of $61,585, *id.*, it is only seeking a little more than 50% of the maximum penalty here, ECF No. 22-1, at 19 n.4.  Having considered Mr. Abbott's financial disclosure reports and sealed declarations, ECF Nos. 9, 27, 27-1, the court concludes that Mr. Abbott's assets, setting aside those held in trust for family members, are sizeable and that a $40,000 penalty is "necessary to effectuate the deterrent aims of the EIGA," *Manigault Newman*, 594 F. Supp. 3d at 8-9.  The

court will accordingly impose the $40,000 penalty sought by the DOJ, along with a late-filing fee of $200.  *See* 5 U.S.C. § 13106(d)(1).[11]

## VI.    CONCLUSION

For the foregoing reasons, the court will grant the United States' Motion for Summary Judgment, ECF No. 22, and will deny Mr. Abbott's Cross Motion for Summary Judgment, ECF No. 23.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:    September 15, 2025

_____

[11] In the event that Mr. Abbott is unable to pay the full penalty amount, he may seek an installment payment plan pursuant to DOJ policy.  *See* U.S. Dep't of Just., Just. Manual § 4-11.300 (2025), https://perma.cc/CY3R-5AKK.